**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Corrine Dindinger, *et al.*, | No. CV-22-00508-TUC-EJM |
| Plaintiffs, | **ORDER** |
| v. | |
| Hartford Life and Accident Ins. Co., | |
| Defendant. | |

Currently pending before the Court is Plaintiffs' Motion to Preclude Defendant from Introducing New Positions Post-Litigation to Defend Its Denial of Coverage (Doc. 32). Defendant has responded (Doc. 34) and Plaintiffs replied (Doc.37). The motion is ripe for adjudication.

### A. Background

The facts surrounding Jacob Dindinger murder are generally undisputed. On July 18, 2021, Jacob Dindinger, an Emergency Medical Technician ("EMT"), was shot while in an ambulance at Quincie Douglas Park on assignment. *See* Administrative Record ("AR") at 000078–80.[1]

On August 13, 2021, Barbara Owens, a representative of Hartford Life and Accident Insurance Company ("HLAIC"), e-mailed Jacob's mother requesting the death certificate in order to allow her to start the claims process. *Id.* at 000013, 000120. On November 23,

---

[1] For citations within the Administrative Record, the Court relies on the Administrative Record page designations on the lower left of each page, rather than the Case Management/Electronic Case Filing ("CM/ECF") page numbers.

2021, a note in the claim file indicates that "this claim did not have a diary set and was closed in error. no [sic] denial letter was drafted or signed off by the TL." *Id.* at 000003. On December 3, 2021, Defendant HLAIC issued a denial letter to Plaintiffs. *Id.* at 000015–000018. The denial letter noted that HLAIC stated:

> We have completed our review of your claim for benefits and have determined that the evidence submitted in support of your claim establishes that Mr. Dindinger's loss does not meet the Policy's requirements under Hazard H-3 Coverage. Accordingly, Accidental Death benefits are not payable under the terms of the Policy. Please allow us to explain.

*Id.* at 000015. The letter went on to quote from portions of the Policy, including the definitions for "injury," "accident, accidental," "covered accident," "covered hazard," and "business of the Policyholder." AR at 000015–000017. The letter also quoted from the H-3 Rider regarding 24-Hour Accident Protection While On Business Hazard. *Id.* at 000016. The letter further noted that the denial of benefits "was based upon Policy language and all documents contained in your claims file, viewed as a whole, including the following specific information[,]" Decedent's certified death certificate. *Id.* at 000017. Defendant HLAIC observed that Decedent's death certificate reported the location of his injury at work and explained that:

> The policy states the Business of the Policyholder means while on assignment by or at the direction of the Policyholder for the purpose of furthering the business of the Policyholder, but does not include any period of time while the Insured Person is working at his or her regular place of employment, during the course of everyday travel to and from work; or during an authorized leave of absence or vacation. Unfortunately, Mr. Dindinger's loss did not occur under a Covered Hazard as defined in the policy. Therefore, Accidental Death Benefits are not payable by the Hartford.

*Id.*

On February 11, 2022, Plaintiffs' counsel wrote to Defendant HLAIC and requested "all 'relevant' data as defined by the Department of Labor (DOL) regarding ERISA participant/beneficiary appeals." *Id.* at 000023. Plaintiffs' counsel did not receive a response, and after a written reminder received twenty-four (24) pages, not including the

1    insurance contract or the Business Hazard Rider.  Pls.' Mot. to Preclude (Doc. 32) at 5; AR

2    at 000001–000024.  On June 24, 2022, Plaintiffs filed a written appeal.  AR at 000075–

3    000077.  On August 8, 2022, Defendant HLAIC denied Plaintiffs' claim on appeal.  *Id.* at

4    000064–000068.  The denial letter again quoted from part of Policy GTA-101392, the H-

5    3 Hazard Rider, and the definitions under the Policy for "accident, accidental," "covered

6    accident," "covered hazard," and "business of the Policyholder."  *Id.* at 000065–000066.

7    The denial letter also pointed to Jacob's death certificate.  *Id.* at 000066.  Defendant HLAIC

8    reiterated that "Mr. Dindinger's accident and loss did not meet the definition of Hazard H-

9    3."  *Id.* at 000067.

10   **B.  *New Arguments Before This Court***

11   Plaintiffs seek to preclude Defendant from basing the denial of their claim on any

12   new arguments not relied on during the administrative process.  Pls.' Mot. to Preclude

13   (Doc. 32) at 8–10.  Specifically, Plaintiffs object to Defendant's argument regarding

14   Jacob's "regular place of employment" and that he was not on a "trip" at the time he was

15   murdered.[2]  *See id.*  Defendant asserts that it provided adequate notice regarding the reasons

16   for their denial, including that Plaintiff was at his regular place of employment and that he

17   was not on a "Trip."  Def.'s Response (Doc. 34) at 7–10.

18   "ERISA was enacted to promote the interests of employees and their beneficiaries

19   in employee benefit plans and to protect contractually defined benefits."  *Collier v. Lincoln*

20   *Life Assurance Co. of Boston*, 53 F.4th 1180, 1185 (9th Cir. 2022) (quoting *Firestone Tire*

21   *& Rubber Co. v. Bruch*, 489 U.S. 101, 113 (1989)).  It is well established law "that a plan

22   administrator undermines ERISA and its implementing regulations when it presents a new

23   rationale to the district court that was not presented to the claimant as a specific reason for

24   denying benefits during the administrative process."  *Id.* at 1186 (citations omitted).  The

25   Ninth Circuit Court of Appeals has "expressed disapproval of post hoc arguments advanced

26   by a plan administrator for the first time in litigation."  *Id.* (citations omitted).  "This rule

27

28          [2] Plaintiffs' reply focuses on precluding whether the ambulance was Jacob's "regular place of employment."

allows the claimant to prepare for further administrative review and future litigation, prevents the claimant from being 'sandbagged' after litigation has commenced, and disallows the plan administrator from initiating 'a new round of review.'" *Id.* (citations omitted).

Defendant HLAIC's denial letters provided the definition for "Business of the Policy Holder" as follows:

> **Business of the Policyholder** means while on assignment by or at the direction of the Policyholder for the purpose of furthering the business of the Policyholder, but does not include any period of time:
>
> 1) while the Insured Person is working at his or her regular place of employment;
>
> 2) during the course of everyday travel to and from work; or
>
> 3) during an authorized leave of absence or vacation.

AR at 000017. Defendant asserts that this is sufficient to put Plaintiffs on notice that it was denying their claim because Jacob was working at his regular place of employment. Def.'s Response (Doc. 34) at 9. Defendant supports this argument with Plaintiffs' counsel's supposition that this was the reason for the denial. *See* AR at 000102. Defendant's contention is without merit. As an initial matter, an insured working at his or her regular place of business is one of three disjunctive exclusions within the definition. Furthermore, Plaintiffs' guessing the reason that they believe Defendant is relying upon does not establish that it was actually the reason Defendant denied the claim. Plaintiffs' counsel gave Defendant HLAIC the opportunity to clarify its position, and it declined the invitation. Now that the administrative process has ended and litigation begun, Defendant cannot now assert this post hoc rationale as a basis for denying Plaintiffs' claim. *Collier*, 53 F.4th at 1186.

### C. *Preclusion of Documents*

Plaintiffs also seek to preclude three (3) pages from inclusion in the Administrative Record that were not provided prior to the initiation of this litigation. Pls.' Mot. to Preclude (Doc. 32) at 10. Defendant HLAIC has indicated its willingness to withdraw the two (2)

pages of claim notes at AR 000122–000123.   Def.'s Response (Doc. 34) at 5 n.1. Therefore, the only document at issue is the H-3 Hazard Rider that was late disclosed.  *See* AR at 000124.  The H-3 Hazard Rider was reproduced in Defendant's denial letter almost in its entirety.[3]   As such, the Court finds that Plaintiffs will not be prejudiced by the inclusion of this additional page.

Accordingly, **IT IS HEREBY ORDERED** that Plaintiffs' Motion to Preclude Defendant from Introducing New Positions Post-Litigation to Defend Its Denial of Coverage (Doc. 32) is **GRANTED in part** and **DENIED in part**.

Dated this 5th day of September, 2023.

Eric J. Markovich
United States Magistrate Judge

---

[3] The only portion of the H-3 Hazard Rider that was not provided in Defendant's denial letters was the "Exclusions" section which states, "This Hazard does not cover injury resulting from an Accident that occurs while the Insured Person is operating or a Passenger on, boarding, or alighting from or by being struck or run down by any Aircraft engaged in an Extra-Hazardous Aviation Activity."  AR at 000124.